UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN FRENCH,

                Petitioner,

Case No. 1:17-cv-837

Hon. Gordon J. Quist

v.

SHERRY L. BURT,

                Respondent.

_____/

### REPORT AND RECOMMENDATION

Benjamin French (sometimes referred to as "French" or "petitioner"), through his counsel, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, I recommend that the petition be denied.

I.       **Background**

A.       **Trial, conviction and sentence**

This case arose out of the killing of two men who were shot in the head while inside a house they shared with others. *People v. French*, No. 308774, 2014 WL 132443 at *1 (Mich. App. Jan. 14, 2014). The murder weapon was a nine-millimeter handgun owned by the father of French's co-conspirator, David Marion, Jr.  *Id*.  A jury convicted French of two counts of first-degree murder (M.C.L. §750.316), conspiracy to commit first-degree murder (M.C.L. §750.157a), armed robbery (M.C.L. §750.529), and possession of a firearm during the commission of a felony (felony-firearm) (M.C.L. § 750.227b).  *People v. French*, No. 308774, 2014 WL 132443 at *1 (Mich. App. Jan. 14, 2014).  French was sentenced to serve concurrent prison terms of life without

parole for the conspiracy and murder convictions and 12 to 25 years for the armed robbery

conviction, and a consecutive two-year prison term for the felony-firearm conviction. *Id*.

### B.    State court appeal

French, through appellate counsel (Ms. Owens), raised five claims on appeal:

I.    Whether the trial court erred in refusing to suppress defendant's statements made during the confrontational phone calls because the consensual monitoring / eavesdropped conversations were illegal. US CONST. AM IV.

II.    Whether defendant's statements should have been suppressed as the fruit of the poisonous tree, that being his unlawful warrantless arrest without probable cause, contrary to the Fourth Amendment.

III.    Whether defendant's rights to due process, the right to present a complete defense, and the right to effective assistance of counsel were violated when the trial court cut off and limited defense counsel's closing argument. US CONST. AMS VI, XIV.

IV.    Whether defendant received ineffective assistance of trial counsel in the conduct and initiation of plea negotiations and in failing to properly advise defendant of the consequences of going to trial and whether the trial court accordingly abused its discretion in denying the motion for a new trial.  US CONST. AM VI, XIV.

V.    Whether the trial court abused its discretion in denying the request for an evidentiary hearing in connection with the motion for a new trial.

*Id*. (Appellate Brief) (ECF No. 8-18, PageID.1544-1545). The Michigan Court of Appeals

affirmed the conviction and sentence. *French*, 2014 WL 132443. French raised the same five

issues in his *pro se* application for leave to appeal to the Michigan Supreme Court, which that

court denied. *People v. French*, No. 148639 (Mich.) (ECF No. 8-19, PageID.1639-1646); *People

v. French*, 496 Mich. 864 (Order) (July 29, 2014).

After his unsuccessful appeal, French, through his current counsel (Ms. Chartier),

returned to the trial court where he filed a motion for relief from judgment (sometimes referred to

as the "MRJ") pursuant to MCR 6.502.  *See* MRJ (July 16, 2015) (ECF No. 8-20).  In addressing

2

the motion, Michigan Circuit Court Judge Canady issued a 31-page Opinion and Order setting out

four issues.[1]

>First, French claimed that a pre-arraignment delay led to his confession:

>Defendant first asserts that he was denied his constitutional and statutory right to counsel when police officers questioned him incessantly and delayed his arraignment unnecessarily. Defendant further argues that, because his arraignment was unnecessarily delayed and used as one of the tools to extract his critical confession, his conviction should be vacated.

Opinion and Order at PageID.1913.

>Second, French claimed that his trial counsel was ineffective:

>Defendant next argues that trial counsel G. Michael Hocking provided ineffective assistance when he conceded in closing argument that Defendant participated in the robbery. Specifically, Defendant claims that, since Felony Murder was an option for the jury, trial counsel's concession that Defendant participated in the robbery was essentially a concession to the most serious charge of Felony Murder.

*Id*. at PageID.1918-1919.

>Third, French claimed that the government engaged in a discovery violation:

>Defendant also contended that a discovery violation occurred that deprived him of a fair trial. Specifically, Defendant asserted that there were "dozens of audio tapes of interrogations and interviews that were conducted by the police and hundreds of pages of documents that, upon information and belief, were never turned over to Mr. French's trial counsel." Defendant also claims that, in addition to receiving "over 30 disks of audio and video recordings that appear to be new to the file," his attorneys have received many "new" documents as well. Despite this contention, however, Defendant fails to describe the content of the "new documents" and the "over 30 disks of audio and video recordings." Nonetheless, according to Defendant, the prosecution's alleged failure to provide the aforementioned discovery "casts doubt on the confidence in the verdict."

*Id*. at PageID.1922-1923.

---

[1] The Court notes that Judge Canady's opinion and order set out the ultimate issues in dispute. The issues raised in French's original MRJ evolved during the briefing process. *See* People's Answer to MRJ (ECF No. 8-21); French's Motion and Brief to supplement MRJ (ECF No. 8-22); People's Answer to motion to supplement MRJ (ECF No. 8-24); French's Reply Brief (ECF No. 8-25); People's Supplemental Answer to MRJ (ECF No. 8-26).

Fourth, French appeared to add a new claim that his appellate counsel was ineffective:

> In response to the prosecutor's reply brief, Defendant now contends that, if Mr. Hocking did receive all of the discovery materials but appellate counsel did not want the complete file, then appellate counsel was ineffective. Specifically, Defendant argues that appellate counsel was ineffective because failing to review the complete record rendered her incapable of adequately assessing trial counsel's performance and potential claims of ineffective assistance of trial counsel. Based on this claim, it is Defendant's position that he has shown good cause for failing to raise the issues in the present Motion on appeal.

*Id.* at PageID.1927. Judge Canady denied French's MRJ. *Id.* at PageID.2144-2174.

French, through counsel, appealed Judge Canady's decision, raising three issues in his application for leave to appeal to the Michigan Court of Appeals:

> I.      Due process provides for the constitutional and statutory right to counsel when involved in an adversarial process. Mr. French was denied that right when police officers questioned him incessantly and delayed arraignment unnecessarily. At one point, police even lied to Mr. French's father and their attorney about Mr. French's whereabouts when they demanded to see him before his arraignment. In such a circumstance, it is proper that the confession and any other incriminating evidence be suppressed where the delay was used as a tool to extract a confession. Did the circuit court improperly deny Mr. French's 6.500 motion when trial counsel was ineffective in not moving to suppress his confession on these grounds, and appellate counsel was ineffective in not raising this issue on appeal, given the unnecessary delay of arraignment that was used as a tool to extract a confession?

> II.     Due process requires effective assistance of counsel, and this means that trial counsel's strategic choices must be reasonable. Here, trial counsel attempted to argue that Mr. French had been interrogated for so long that his statements were not credible, yet this strategy was abandoned when trial counsel then conceded Mr. French's guilt to the jury, all without Mr. French's knowing, voluntary and understanding consent. Trial counsel's decision to switch gears and concede guilt was unreasonable because of the magnitude of the consequences to Mr. French. Did the circuit court improperly deny Mr. French's 6.500 motion when Mr. French's constitutional rights were violated by trial counsel's telling the jury that Mr. French was guilty of armed robbery without Mr. French's knowing, voluntary, and understanding consent, thereby setting him up for a certain guilty verdict and lifetime spent in prison, and was appellate counsel ineffective for not previously raising this issue?

III.    Every defendant has the constitutional right to the effective assistance of counsel at every stage of the legal process. Despite this right, trial counsel failed to fully investigate the case in order to strategically plan a defense and illustrate the reasonable doubt that existed. He also told the jury that Mr. French was guilty of robbery, which in no way can be construed as sound trial strategy. Appellate counsel further violated this obligation by not obtaining and fully reviewing the entire trial file so that all appealable issues could be correctly identified. Did the circuit court improperly deny Mr. French's 6.500 motion, and have these errors by previous counsel cast overwhelming doubt on the reliability of the jury verdict and the outcome of the appeal?

*People v. French*, No. 335141 (Mich. App.) (ECF No. 8-28, PageID.1940).

The Michigan Court of Appeals denied the application "because defendant failed to establish that the trial court erred in denying his motion for relief from judgment." *Id.* (Order) (Dec. 21, 2016) (PageID.1932).  French, through counsel, raised the same three claims in his application for leave to appeal to the Michigan Supreme Court, which denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. French*, No. 154989 (Mich.) (ECF No. 8-29, PageID.2193-2194); *People v. French*, 501 Mich. 859 (Order) (Sept. 12, 2017).

This matter is now before the Court on French's petition seeking federal habeas review pursuant to 28 U.S.C. § 2254.  *See* Petition (ECF No. 1).  French, through counsel, has raised three issues:

I.    Due process and the right to counsel are deeply rooted in the very foundation of our criminal justice system. Citizens charged with a crime have the right to attorney assistance and to a timely arraignment in order to protect these inalienable rights. Were Mr. French's rights violated when arraignment was unnecessarily delayed and access to his attorney was denied so that police officers could continue their relentless interrogation until they obtained a less-than-reliable confession?

II.    Trial counsel is required to develop reasonable trial strategy, relay and discuss that strategy with his client, and pursue all avenues to effectively follow through on the defense strategy. Mr. French's trial attorney developed a strategy throughout the trial that he surreptitiously and abruptly abandoned during closing arguments when he told the jury that Mr. French was guilty. Were Mr. French's

rights to effective counsel ripped out from under him when his trial counsel blindsided him and told the jury Mr. French was guilty without so much as a word to Mr. French?

III.    Trial counsel and appellate counsel cannot effectively represent their clients without thoroughly investigating all aspects of a criminal case.  Failure by trial counsel to fully investigate the charges and evidence, or attempt to locate witnesses, renders it impossible to develop sound, reasonable trial strategy. Failure by appellate counsel to fully review the entire file renders it impossible to define issues ripe for appeal. Was Mr. French denied his rights to effective assistance of counsel when his trial counsel failed to complete a thorough investigation of the available facts in the instant matter in order to develop sound trial strategy and appellate counsel failed to review the necessary and required information needed to identify proper appellate issues?

Petition at PageID.12-21.

## II.    Standard of review

French seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before French may seek such relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies.  *See* 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Exhaustion is not an issue in this case.[2]

"Under AEDPA, a habeas petition is eligible for relief only if he shows that the state court's decision (1) was 'contrary to  .  .  .  clearly established' federal law as determined by U.S. Supreme Court precedents or (2) amounted to 'an unreasonable application' of the same.  28 U.S.C. § 2254(d)(1)."  *Woods v. Cook*, 960 F.3d 295, 300 (6th Cir. 2020).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal

---

[2] *See* Answer (ECF No. 7, PageID.6) ("The State is not arguing that consideration of any of French's habeas claims is barred by the failure to exhaust a claim for which a state court remedy exists.").

justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011) (internal quotation marks omitted).  The federal habeas statute "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  In addressing the petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### III.    Procedural default

French does not seek habeas relief with respect to issues addressed in his appeal of right.  *See French*, 2014 WL 132443.  All claims raised in his petition arose from his post-appeal MRJ.  Respondent contends that French's claims are subject to the doctrine of procedural default. Answer (ECF No. 7, PageID.559). The Court agrees, with the exception of French's claim that his appellate counsel provided ineffective assistance.[3]  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default under Michigan Court Rule 6.508(D) constitutes an

---

[3] *See Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004) (state collateral review under MCR 6.500 *et seq*. is the first opportunity that petitioner had to address the issue of ineffective assistance of appellate counsel); *Tucker v. Renico*, 317  F.Supp.2d  766, 773 (E.D. Mich. 2004) (observing that a petitioner's post-conviction motion filed pursuant to MCR 6.500 is "the first practical opportunity to address the issue [of ineffective assistance of appellate counsel] in state court").

independent and adequate state ground for denying habeas review.  *Guilmette v. Howes*, 624 F.3d 286, 290-91 (6th Cir. 2010).

Upon reviewing the file, the Court concludes that French's claim of ineffective assistance of appellate counsel cannot be evaluated without reviewing his other claims.  Given the record in this case, the Court will address the merits of all three grounds raised in the habeas petition.  *See Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011) (addressing the merits after observing that "[t]he extent to which these claims are procedurally defaulted is a nettlesome question; the extent to which they are meritless, much less so"); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case").  Respondent recognized the potential complexity of addressing procedural default, and, in the alternative, addressed the merits of French's claims.[4]

### IV.    Discussion

### A.    Issue I – French's delayed arraignment violated his due process rights and right to counsel

### 1.    Delayed arraignment

French contends that the police delayed his arraignment because they wanted free reign to repeatedly interrogate him.  Memorandum (ECF No. 1-1, PageID.50).  In addition, French points out that,

> During one of his interrogations, Mr. French's father and an attorney went to the Michigan State Police post and demanded to see Mr. French. (Tr IX, 51-52, 88-89.) The detectives lied and told them that Mr. French was not there. (Tr IX, 88-89.) That fact alone undercuts any suggestion that the pre-arraignment delay was innocent.

---

[4] *See, e.g.*, Answer at PageID.563 ("Although consideration of this claim should be deemed barred by an unexcused procedural default, the State will nevertheless address its lack of merit because that is sometimes the easiest path. *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997)."

*Id.* at PageID.51.  French contends that "[w]ithout his unconstitutional admissions, there would have been no convictions."  *Id.*

French admits that his interrogation was the subject of a suppression motion; yet, at the same time, he suggests that the issue of suppression was not fully addressed:

> While a motion to suppress was filed in regard to the long periods of interrogation, the specific issue of the unnecessarily long delay was not fully addressed due to trial counsel and appellate counsel failing to identify the issue. This was not a matter of strategy because the suppression of the confession was critical to Mr. French's defense. Because Mr. French's arraignment was unnecessarily and unconstitutionally delayed and used as one of the tools to extract his critical "confession," his petition for habeas corpus should be granted.

*Id.* at PageID.51-52.

In essence, French is asking this Court to perform a *de novo* re-evaluation of his interrogation.  "What petitioner fails to appreciate, however, is that we review his claim through the lens of AEDPA, not as the court of the first instance." *Davis v. Jones*, 306 Fed. Appx. 232, 238 (6th Cir. 2009).  To paraphrase the Sixth Circuit:

> [Circuit Court Judge Canady] weighed the record and concluded that the statement was not rendered involuntary by pre-arrangement delay. While petitioner urges us to come to a different conclusion, our task is to determine whether [Judge Canady's] decision was contrary to clearly established federal law.

*Id.*

Judge Canady addressed this claim at length, stating:

> Defendant first asserts that he was denied his constitutional and statutory right to counsel when police officers questioned him incessantly and delayed his arraignment unnecessarily.  Defendant further argues that, because his arraignment was unnecessarily delayed and used as one of the tools to extract his critical confession, his conviction should be vacated.  The Court finds that this contention lacks merit; thus, it cannot serve as a basis for relief in this matter. . . .
>
> In *People v Cipriano*, our Supreme Court examined the effect of the [Michigan] statutory requirement that an arrested person be brought before a magistrate for arraignment "without unnecessary delay" upon the admissibility of a confession obtained during a period of prearraignment delay. The Court held that

the test of admissibility is whether the totality of the circumstances surrounding the confession indicates that it was freely and voluntarily made.

For Fourth Amendment search and seizure purposes, "a delay of more than forty-eight hours after arrest is presumptively unreasonable, absent extraordinary circumstances." However, Michigan law does not require the automatic suppression of a confession given during a prearraignment delay. Rather, a prearraignment delay is merely one factor in the evaluation of the voluntariness of a confession and whether a statement should be suppressed under the Fifth Amendment. The focus should be not just on the length of delay, but rather on what occurred during the delay and its effect on the accused. An otherwise competent confession should not be excluded solely because of a delay in arraignment.

Opinion at PageID.1913-1914 (footnotes omitted).

Judge Canady listed the relevant factors to consider as set forth in *People v. Cipriano*, 431 Mich. 315, 334; 429 N.W.2d 781 (1988):

In addition to unnecessary delay in arraignment, our Supreme Court directed Michigan courts to consider the following factors in determining whether a statement is voluntary: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*Id*. at PageID.1914-1915 (footnote omitted).  The judge further stated that under Michigan law:

In engaging in the balancing process that *Cipriano* outlines, a trial court is free to give greater or lesser weight to any of the *Cipriano* factors, including delay in arraignment. A trial court cannot, however, give preemptive weight to that one factor  .  .  .  To do so is to adopt a rule of automatic suppression of a confession obtained during the period of delay.

*Id*. at PageID.1915 (footnote omitted).

After identifying the relevant legal standard, Judge Canady set out a timeline which demonstrated that French confessed within 24 hours and that the police held him for less than 48 hours:

The prosecution maintains, and the testimony supports that Defendant confessed to his involvement in the robbery and the murders within 24 hours of his arrest, and police held him for less than 48 hours before he was arraigned. MSP troopers arrested Defendant during a traffic stop at approximately 2:30 p.m. on September 16, 2010. He was then transported to the Lansing MSP post for questioning by Detective Sergeant Thomas DeClerq. DeClerq testified that he began the interview with Defendant at approximately 4:00 p.m. The interview took place in a room that was approximately 8' x 6' or 10' x 6' in size with a table and three chairs. Defendant was initially handcuffed to a bar, and DeClerq removed the handcuffs. DeClerq identified himself and informed Defendant of the nature of the investigation. DeClerq informed Defendant of his *Miranda* rights. Defendant indicated that he understood his rights. Defendant then indicated that he wished to waive his rights and agreed to speak with DeClerq about the case. The interview was videotaped. DeClerq observed no signs that Defendant was under the influence of drugs or alcohol, nor did he observe any injuries or any other ailment that would impede Defendant's ability to think clearly. Defendant was lucid and appeared to understand DeClerq's questions and what was happening. Defendant's speech was clear, and DeClerq was able to understand what Defendant was saying to him. The questioning lasted for approximately three hours, and Defendant was subsequently booked at the MSP post on the charge of Open Murder. He was then transported to the Lansing City Jail, where he was lodged for the night.

A polygraph examination was scheduled for the next morning. Det. Sgt. DeClerq picked up Defendant at the Lansing Jail that morning at 8:41 a.m. LeClerq walked Defendant in belly chains to the basement of City Hall where his police car was parked. He then drove Defendant to the MSP Crime Lab where the polygraph examination would be held. On the way there, DeClerq re-advised Defendant of his *Miranda* rights. Defendant indicated he understood his rights. Again, Defendant waived his rights and agreed to speak to law enforcement about the case. At the lab facility, DeClerq walked Defendant back to the polygraph unit and left with the examiner, Lt. Shawn Loughrige.

DeClerq left the room and watched the polygraph examination on closed circuit television. Lt. Loughrige advised Defendant of his *Miranda* rights, and Defendant waived his rights at 9:50 a.m. The pre-polygraph interview lasted for approximately an hour. Defendant denied any involvement in the robbery and murders. Lt. Loughrige asked Defendant if he was hungry, and Defendant stated that he had eaten at 8:00 a.m. that morning. Lt. Loughrige gave MSP Detective Frank Mraz money to buy Defendant lunch and a pack of cigarettes.

Lt. Loughrige began the polygraph examination at 1:11 p.m. and ended it at 1:36 p.m. Based on the examination results and Lt. Loughrige's experience and training, it was obvious that Defendant was not being truthful. In the post-polygraph interview, Lt. Loughrige confronted Defendant about his being untruthful. Defendant admitted his involvement in the robbery and murders within 20 minutes. Defendant further admitted that the plan to commit the robbery also included a plan

11

to kill Owen Goodenow. Lt. Loughrige then asked Defendant if he was willing to speak with Det. Sgt. DeClerq again. The post-polygraph interview lasted approximately 30-45 minutes.

The detectives then provided Defendant with lunch from Wendy's, which Defendant was allowed to eat in the room alone. When Defendant finished his lunch, Det. Sgt. DeClerq reentered the room and continued his questioning. DeClerq re-informed Defendant of his *Miranda* rights, and Defendant indicated he was willing to talk about the case. This interview was also videotaped. As previously noted, Defendant told DeClerq about how he and Marion went to the victims' home to rob Owen Goodenow. Defendant admitted that he carried a handgun to the scene and that he and Marion discussed beforehand what method they would use to kill Goodenow. Defendant told DeClerq he knew the victims were going to die when he pulled into the Glasgow driveway. When DeClerq finished his interview, Defendant indicated that he wanted to smoke a cigarette. Loughrige took Defendant outside the building where they each smoked a cigarette. When they finished smoking, Defendant was returned to the room where Detective Mraz questioned Defendant for less than 30 minutes.

Following the interview, Defendant was transported in chains back to the Lansing City Jail. He was lodged at the jail at 3:30 p.m. that day. No further interviews were conducted with Defendant. The Chief Assistant Prosecutor authorized the charges against Defendant at 8:28 a.m. the following morning (September 18, 2010). According to 54-A District Court records, Defendant was arraigned that day.

Applying the *Cipriano* factors, the Court finds that Defendant's statements to police were voluntary, and therefore, suppression of Defendant's statements would not have been appropriate. At the time of his arrest, Defendant was 22 years of age. Defendant was also a high school graduate and appeared to be of average intelligence. It is unknown whether Defendant had prior police contacts. The Court cannot find that the questioning of Defendant by law enforcement was repeated or prolonged in nature. Defendant was questioned for approximately three hours on the day of his arrest and approximately five hours the following day (including the polygraph, which Defendant failed). Defendant was detained less than 24 hours before he admitted to his participation in the robbery and murder of the victims. In addition, Defendant was repeatedly advised of his *Miranda* rights before being questioned, and he repeatedly waived them. Defendant voluntarily spoke to the police and participated in the polygraph examination. Defendant did not appear to be ill, injured, tired or under the influence of drugs or alcohol at any time during the questioning by police. Defendant was regularly fed, allowed to sleep, and was allowed to take several cigarette breaks. At no point during the questioning did Defendant indicate that he needed of medical assistance, nor did he appear to actually need medical assistance. Defendant did not ask to make a telephone call during the questioning, and at no time did he ask to speak to an attorney. Defendant was not physically or mentally abused, nor was he threatened with physical abuse.

> Taking all of the above factors into consideration, the Court cannot find that the prearraignment delay of less than 48 hours rendered Defendant's confession involuntary. Therefore, based on the totality of the circumstances, the Court concludes that there was no basis to suppress Defendant's confessions.

*Id*. at PageID.1915-1918.

As an initial matter, Judge Canady found that plaintiff had a prearraignment delay of less than 48 hours. This time frame was reasonable. *See Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (the federal constitution requires that a criminal defendant be given a reasonably prompt probable cause determination, such as arraignment, his arrest, and that a delay in arraignment more than 48 hours after an arrest is presumptively unreasonable). "This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours." *Id*. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id*. However, the duration of such a delay is only one factor to consider in determining the voluntariness of a confession.

In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112-13 (1985).

> The ultimate test of whether a confession accords with due process is "the test of voluntariness." *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). The question in each case is "whether a defendant's will was overborne at the time he confessed." *Reck v. Pate*, 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). To determine whether a defendant's will was overborne, a court must examine "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Relevant factors include: (1) the duration and conditions of detention; (2) the repeated and prolonged nature of the questioning; (3) the use of physical punishment; (4) the defendant's physical and mental state; (5) the youth of

13

> the defendant; (6) the defendant's lack of education or low intelligence; and (7) the
> lack of any advice to the defendant on his constitutional rights. *See Withrow v.*
> *Williams*, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993);
> *Bustamonte*, 412 U.S. at 226, 93 S.Ct. 2041; *Culombe*, 367 U.S. at 602, 81 S.Ct.
> 1860.

*Evans v. Booker*, 379 Fed. Appx. 518, 521 (6th Cir. 2010).  Here, Judge Canady correctly identified

these principles when he cited *Cipriano*, *see id*., and properly concluded that there was no basis to

suppress French's confessions as involuntary.

The state court's decision was neither contrary to, nor an unreasonable application

of, clearly established Federal law as determined by the Supreme Court; nor was the decision based

on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

2254(d).  Accordingly, this claim for habeas relief should be denied.

### 2.       Right to counsel

While French refers in general terms to a denial of right to counsel, he does not

develop this claim.  *See* Memorandum at PageID.46-48.  The record reflects that French waived

his *Miranda* rights and did not request an attorney.  Now, French claims that he was denied the

right to counsel because, unbeknownst to him, counsel was available at the Michigan State Police

Post.  French's claim fails.  "Events occurring outside of the presence of the suspect and entirely

unknown to him surely can have no bearing on the capacity to comprehend and knowingly

relinquish a constitutional right." *Moran v. Burbine*, 475 U.S. 412, 422 (1986).  As the Supreme

Court explained:

> [W]e have never read the Constitution to require that the police supply a suspect
> with a flow of information to help him calibrate his self-interest in deciding whether
> to speak or stand by his rights. Once it is determined that a suspect's decision not
> to rely on his rights was uncoerced, that he at all times knew he could stand mute
> and request a lawyer, and that he was aware of the State's intention to use his
> statements to secure a conviction, the analysis is complete and the waiver is valid
> as a matter of law.

*Id.* at 422-23 (internal citations omitted). Accordingly, this claim for habeas relief should be denied.

    **B.    Issue II – French's trial counsel provided ineffective assistance when counsel abandoned his trial strategy during closing arguments and told the jury that French was guilty**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

Second, the defendant must show that counsel's deficient performance prejudiced the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id.* The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Here, the government charged French with two counts of open murder, one count of conspiracy to commit murder, felony firearm, and armed robbery.  Opinion at PageID.1919. French contends that his trial counsel provided ineffective assistance when counsel conceded in closing argument that French participated in the robbery.  *Id*. at PageID.1918. "Specifically, Defendant claims that, since Felony Murder was an option for the jury, trial counsel's concession that Defendant participated in the robbery was essentially a concession to the most serious charge of Felony Murder."  *Id*. at PageID.1918-1919.

Judge Canady addressed the claim as follows:

> There was overwhelming evidence of Defendant's guilt presented at trial, including Defendant's admission to law enforcement that he participated in the robbery. As a result, defense counsel had few options in terms of a defense at trial, and it appears that counsel opted to pursue a theory that would minimize Defendant's involvement and negate the appearance of malice aforethought. Specifically, the defense strategy throughout the trial focused on implicating Marion as the person who planned and perpetrated the murders, not French.
>
> During his closing argument, Defendant's trial counsel did concede that Defendant had participated in the robbery on the day in question. However, trial

counsel further emphasized to the jury that if a death occurs during the commission of a robbery, that alone does not support a conviction for Felony Murder. Trial counsel also suggested that it was Marion, not French, who knew the victims well and frequently visited the Glasgow residence. Defense counsel argued to the jury that no one knew the layout of the Glasgow residence or the routines of the residents better than Marion, which showed that Marion was the one who not only planned the robbery, but also decided to kill the victims to eliminate witnesses. Counsel also noted that, while French may have been at the Glasgow residence during the robberies, he remained outside in the car the entire time. Counsel also pointed out that Marion was the only person who entered the residence that day, and French's knowledge of Goodenow and Browns' deaths came from the gunshots he heard coming from the residence and Marion's statements to Defendant after the murders.

Opinion at PageID.1919-1920 (footnote omitted).[5]

Judge Canady found that counsel's decision to concede guilt on the robbery charge was a valid trial strategy given counsel's limited options:

Decisions regarding what evidence to present and on what to focus in closing argument are presumed to be matters of trial strategy. "It is well established that arguing that defendant is guilty of an offense is not necessarily ineffective assistance of counsel. . . ." Only a complete concession of a defendant's guilt renders counsel ineffective. When the evidence clearly establishes one element of an offense, counsel may make the strategic decision to concede that element in order to reinforce the defendant's credibility and focus the jury's attention on the remaining disputed elements. This Court "will not second-guess trial counsel's strategy of conceding certain elements of the charge at trial."

In the present case, the Court finds that trial counsel's trial tactics were permissible. Trial counsel disputed the elements and charges for which evidence was in dispute seemingly to retain credibility with the jury. Counsel's statements were consistent with the defense theory of the case, which was that Marion committed the murders. In conceding that Defendant had the intent to steal, in context, it is clear that defense counsel was attempting to contrast a thief (Defendant) from a murderer (Marion). Since trial counsel conceded guilt where the evidence was overwhelming, but contested guilt on charges and elements where the evidence was less strong, his concession of guilt regarding the robbery did not

---

[5] In reaching this determination, Judge Canady noted that

Michigan has no statutory felony-murder rule which allows the mental element of murder to be satisfied by proof of the intention to commit the underlying felony. In order to convict a defendant of murder, it must be shown that he acted with intent to kill or to inflict great bodily harm. The issue of malice must be submitted to the jury. The jury may not find malice from the intent to commit the underlying felony alone.

Opinion at PageID.1920, fn. 43, citing *People v. Aaron*, 409 Mich. 672, 730; 299 N.W.2d 304 (1980).

amount to objectively unreasonable assistance, let alone unreasonable assistance that likely affected the outcome of the trial."

Defendant also argues that trial counsel was constitutionally deficient because, prior to conceding Defendant's participation in the robbery in his closing argument, counsel did not first obtain Defendant's consent to do so. The Court finds this argument lacks merit because it ignores the fact that Defendant admitted to his participation in the robbery, and the jury was able to view/listen to Defendant's recorded interviews at trial. In addition, Lt. Loughrige testified that Defendant admitted that he and Marion had planned to rob Goodenow because they believed that Goodenow had $80,000 to $100,000 in the safe he kept in his bedroom. Defendant further admitted that he and Marion went over to the Glasgow residence under the guise of purchasing marijuana. Aside from Defendant's admissions, police also located Goodenow's safe at Defendant's apartment along with a receipt for the reciprocal saw Defendant used to open the safe. The evidence (including Defendant's statements) and testimony clearly established that it was Defendant that placed his participation in the robbery before the jury. Counsel is not ineffective for conceding what is obvious based upon the evidence. . . .

Defense counsel provided a detailed and articulate closing argument in which he succinctly pointed out the lack of evidence to support his client's guilt and the weakness of each witness's testimony. Despite trial counsel's concession to Defendant's participation in the robbery, he made every effort to negate any inference that Defendant possessed the requisite malice to be guilty of Felony Murder.

*Id*. at PageID.1920-1922 (footnotes omitted).

Judge Canady's opinion set forth a detailed explanation of why trial counsel's decision to concede guilt on the robbery charge was an appropriate strategic decision.  The court addressed the viability of such a strategy in *Simmons v. Huss*, No. 2:18-CV-11984, 2019 WL 1746271 (E.D. Mich. April 18, 2019):

Established Supreme Court law recognizes that there are circumstances when such an argument conceding a defendant's guilt to a lesser charge does not amount to deficient performance under *Strickland*. *Florida v. Nixon*, 543 U.S. 175, 187-88 (2004) (citations omitted). By candidly acknowledging the strength of the prosecutor's case, an attorney can build credibility with the jury and possibly persuade the jury to focus on other factors important to the defendant. *Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (per curiam). An attorney "cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Nixon*, 543 U.S. at 192 (citing *United States v. Cronic*, 466 U.S. 648, 656 n. 19 (1984)). Therefore, "[a] defense counsel's

18

concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel." *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (Gadola, J.) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) ); *see also, Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between  .  .  .  a tactical retreat and  .  .  .  a complete surrender.").

*Simmons*, 2019 WL 1746271 at *4.

Here, given the strength of the evidence against French, his trial counsel recognized that a "tactical retreat" was a viable option; in this case, conceding that French was involved in the robbery.  By candidly acknowledging the strength of the prosecutor's case with respect to the robbery, French's counsel could build credibility with the jury and possibly persuade them that French was not responsible for the murders.  *See Yarborough*, 540 U.S. at 9.  In summary, Judge Canady properly denied French's claim that his trial counsel provided ineffective assistance.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.[6]

---

[6]  French submitted supplemental authority, *McCoy v. Louisiana*, -- U.S. --, 138 S. Ct. 1500 (2018) (ECF No. 12-1) to demonstrate that "trial counsel usurped Mr. French's decision when [counsel] conceded guilt at trial." *See* Motion (ECF No. 10, PageID.2625). In *McCoy*, "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt," yet the trial court permitted counsel at the guilt phase of a capital trial to tell the jury that the defendant "committed three murders" and "[H]e's guilty". *McCoy*, 138 S. Ct. at 1505. The court reversed and remanded the case, stating in part,

> We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the Assistance of Counsel for his defense," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

### C.    Issue III – French's trial counsel and appellate counsel were ineffective for failing to investigate his case

### 1.    Development of the issue

While Issue III in French's petition refers to the ineffectiveness of both trial counsel and appellate counsel, French directs his argument at appellate counsel. *See* Memorandum at PageID.58-74.  The gist of French's claim is that because appellate counsel failed to fully review the entire file, it was impossible for her to define the issues which were ripe for appeal.  Petition at PageID.18.

By way of background, French's MRJ did not include this issue.  *See* MRJ (ECF No. 8-20).  After the government filed its answer, French added an issue "to address the discovery violation," claiming that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over dozens of audiotapes and hundreds of pages of documents related to the file. *See* French's Motion and Brief to Supplement (ECF No. 8-22, PageID.1819-1820).   After receiving the government's response, French mentioned ineffective assistance of appellate counsel in another reply brief, stating that:

> The issue [in the government's brief] related to a large volume of discovery that prior appellate counsel did not have to review when filing Mr. French's direct appeal.  The initial assumption was that trial counsel did not have this material because it was turned over to appellate counsel.  Trial counsel later filed an affidavit with this Court indicating that he did, in fact, have these materials, but that his recollection is that appellate counsel did not want the complete file.

---

*Id.*  In support of his claim, French submitted an affidavit stating that Mr. Hocking conceded guilt to the jury, in one instance "told the jury that I was 'clearly in this robbery up to [my] neck, no question,'" that  "Mr. Hocking never discussed conceding guilt with me before this statement was made to the jury," and that "[i]f Mr. Hocking had consulted with me before conceding guilt to the jury, I would not have given him permission to do so."  French Aff. (Aug. 9, 2018) (ECF No. 12, PageID.2662).  French's reliance on *McCoy* is misplaced.  *McCoy*, decided on May 14, 2018, announced a new rule of criminal procedure which is not retroactive in this collateral proceeding.  *See Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020) (concluding "that the Supreme Court has not made *McCoy v. Louisiana* retroactive to cases on collateral review"); *Simmons*, 2019 WL 1746271 at *5 ("a state court decision cannot be challenged under § 2254(d) based on Supreme Court decisions not on the books at 'the time the state court render[ed] its decision.' *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotations and emphasis omitted)").

> If trial counsel is indeed correct, and appellate counsel did not want the complete file, then this would be ineffective assistance of appellate counsel. Appellate counsel is responsible for reviewing the entire file to determine what issues to raise on appeal. . .

French Reply Brief (ECF No. 8-25, PageID.1868-1869).

In evaluating this claim, Judge Canady addressed the interaction between French's trial counsel and his appellate counsel:

> In the present case, the prosecutor, in response to Defendant's argument regarding discovery, presented the Court with an affidavit by Defendant's trial counsel, G. Michael Hocking, in which he stated that, to his knowledge, he received all of the discovery materials that were relevant to Defendant's case. Mr. Hocking also stated that, following Defendant's sentencing, he was contacted by Defendant's appellate attorney, Mary Owens, regarding discovery materials that were relevant to perfecting an appeal on Defendant's behalf. Mr. Hocking noted that Ms. Owens was most interested in the police reports and, at her request, he provided her with approximately 40 compact discs containing the police reports. Mr. Hocking further noted that, to his recollection, Ms. Owens did not request any additional discovery from him. Lastly, Mr. Hocking indicated that he was aware that Defendant's current counsel [*i.e.*, French's counsel in this habeas case] asserted in the present Motion that Defendant did not receive all of the discovery; however, at no time did Defendant's current counsel contact Mr. Hocking to inquire about the discovery he previously received.

Opinion at PageID.1924-1925.

The Judge noted that French addressed ineffective assistance of appellate counsel after receiving the prosecutor's reply brief:

> In response to the prosecutor's reply brief, Defendant now contends that, if Mr. Hocking did receive all of the discovery materials but appellate counsel did not want the complete file, then appellate counsel was ineffective. Specifically, Defendant argues that appellate counsel was ineffective because failing to review the complete record rendered her incapable of adequately assessing trial counsel's performance and potential claims of ineffective assistance of trial counsel.

Opinion at PageID.1927.   After reviewing the parties' briefs, Judge Canady concluded that, "in the present case, the essential inquiry is whether a reasonable appellate attorney could conclude

that the delay in arraignment, the robbery admission and the alleged discovery violation were not worthy of mention on appeal." *Id*. at PageID.1929.

Judge Canady addressed this claim and found that French's appellate counsel was not constitutionally ineffective:

> For the reasons stated above, the Court finds that the issues raised in the present Motion [for relief from judgment] are without merit, and a reasonable appellate attorney could conclude that the issues were not worthy of mention on appeal. As a result, appellate counsel's conduct did not fall below an objective standard of reasonableness, and Defendant was not prejudiced because raising the aforementioned issues would not have changed the outcome of the appeal in this matter. Although Defendant now suggests that appellate counsel should have pointed the finger at other suspects as a defense, the Court declines to conclude that counsel was ineffective for not advancing such an argument - especially in light of Defendant's confessions and the physical evidence presented at trial.

Opinion at PageID.1929.

## 2.   Discussion

To demonstrate ineffective assistance of appellate counsel under *Strickland*, French must prove both deficient performance and prejudice.   With respect to the first prong, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), citing *Strickland*.   It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745 (1983). "[I]t is not deficient performance to leave some colorable issues out; indeed, it may even be the best type of performance." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015).

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id*. at 752, quoting R. Stern,

Appellate Practice in the United States 266 (1981).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention."  *Id*.  The strategic and tactical choices to determine which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).

With respect to the second prong, French must show prejudice, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Here, appellate counsel's alleged failure to investigate resulted in two issues being omitted from the appeal: the delay in the arraignment and the ineffective assistance of trial counsel for conceding guilt on the charge of robbery.[7]  To resolve the issue of ineffective assistance of appellate counsel, the Court considers a number of factors, including whether the omitted issues were "significant and obvious" and whether they were "clearly stronger than those presented" in the actual appeal.  *Bell*, 801 F.3d at 562.  Here, it is unnecessary for the Court to consider the relative strength of the omitted issues, because neither of these claims have merit.  *See* Discussion, §§ IV.A. and B, *supra*. French's appellate counsel cannot be deemed ineffective for omitting these meritless issues from the appeal. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel").

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based

---

[7] While Judge Canady's opinion also referenced the discovery claim, that claim is not part of this habeas petition.

on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

### V.      Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED** without prejudice.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:   _____April 5, 2021_____

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).