UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BENJAMIN FRENCH,

        Petitioner,

v.

SHERRY L. BURT,

        Respondent.
_____/

Case No. 1:17-cv-837

Honorable Gordon J. Quist

# ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITIONER'S HABEAS PETITION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. United States Magistrate Judge Ray Kent has issued a Report and Recommendation (R & R), recommending that the habeas petition be denied on the merits. (ECF No. 16.) Petitioner, Benjamin French, with the assistance of counsel, filed objections. (ECF No. 17.)

Upon receiving objections, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). After conducting a de novo review of the report and recommendation, the objections, and the pertinent portions of the record, the Court will: (1) approve the R & R; (2) adopt the R & R, as supplemented by this order, as the opinion of the Court; (3) deny the habeas petition; and (4) deny a certificate of appealability.

**DISCUSSION**

I.    **Procedural Default**

Petitioner first objects to the magistrate judge's determination that review of Petitioner's claims might be barred by the doctrine of procedural default.  Petitioner acknowledges that he did not raise his first two habeas issues on direct appeal but claims that his failure was not a procedural default because he established cause and prejudice for not raising them on direct appeal.  (Obj., ECF No. 17 at PageID.2722-2723.)  Additionally, Petitioner claims that the Court's failure to consider the claims would result in a fundamental miscarriage of justice.  (*Id.* at PageID.2723.)  Both arguments, however, depend on the determination that the underlying issues are meritorious.  It is that very fact—that determination of procedural default requires determination of the merits—that led the magistrate judge to forego resolving any of Petitioner's claims on the ground of procedural default in favor of addressing the merits.  Thus, whether review of Petitioner's habeas challenges might be barred on the ground of procedural default is simply immaterial to the resolution of those claims.  On de novo review, the Court agrees with the magistrate judge that it is a simpler matter to review Petitioner's claims on the merits than to resolve the procedural default issue.

II.   **Delayed Arraignment**

In Petitioner's first habeas ground he argued that his rights to a timely arraignment and attorney assistance were violated when his "arraignment was unnecessarily delayed and access to his attorney denied so that police officers could continue their relentless interrogation until they obtained a less-than-reliable confession." (Pet., ECF No. 1 at PageID.12.)  In rejecting Petitioner's claim, the trial court accounted for the entire period between Petitioner's arrest and his arraignment, including each specific instance wherein Petitioner was subject to questioning by police. (Ingham Cnty. Cir. Ct. Op. & Order, ECF No. 8-27 at PageID.1913-1918.)

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94, 122 S. Ct. 1843, 1849-50 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

Petitioner says that the magistrate judge should have conducted a de novo review of the constitutional challenge to Petitioner's interrogation.  The magistrate judge declined that invitation and, instead, applying appropriate AEDPA deference, concluded that Petitioner failed to show that the trial court's consideration of the totality of the circumstances surrounding Petitioner's confession was inconsistent with clearly established federal law or that the underlying factual determinations were unreasonable on the record.

In Petitioner's objection, he again asks the Court to conduct a de novo review of the trial court's decision.  Petitioner recounts the circumstances of his interrogation and claims "[t]he totality . . . actually reveals that there was a delayed arraignment in order to interrogate [Petitioner], causing his confession to be involuntary." (Obj., ECF No. 17 at PageID.2735.)  Perhaps the trial court could have been weighed the factors differently and found in favor of Petitioner.  But that is not the standard.  Petitioner must show that the trial court's analysis is either premised on an unreasonable determination of the facts or is contrary to clearly established federal law.  Petitioner

3

does not attempt to make that showing. He does not identify a single fact found by the trial court that is unsupported by the record, nor does he explain how the trial court's consideration of the totality of the circumstances runs afoul of relevant Supreme Court authority. Therefore, Petitioner's objection to the R & R with regard to his first habeas ground is without merit.

### III. Ineffective Assistance of Trial Counsel When Counsel Conceded Petitioner's Guilt of Robbery

Petitioner next contends that his trial counsel rendered ineffective assistance when he essentially conceded Petitioner's guilt of the charged crime of armed robbery during closing arguments. This claim has two distinct facets: first, that counsel acted improvidently in conceding the issues; and second, that counsel acted improvidently in making the concession without ever discussing it with Petitioner.

The R & R recounts in detail the trial court's analysis of this claim. The magistrate judge concluded that the trial court's determination of the issue was consistent with clearly established federal law.

Petitioner contends that when counsel acknowledged that Petitioner participated in a robbery he essentially "gave away the farm."[1] According to Petitioner, when counsel acknowledged Petitioner's involvement in the robbery, he paved the way for the jurors to conclude that Petitioner was guilty of felony murder.

The trial court did not see it that way. The trial judge reasoned that counsel was stuck with Petitioner's admissions regarding his involvement with the robbery and that counsel's acknowledgment of that fact was more of a tactical retreat that permitted counsel to draw clear lines distinguishing the intent necessary to find armed robbery from the intent necessary to find

---

[1] *United States v. Allison*, 59 F.3d 625, 629 (7th Cir. 1995) ("Allison also claims that his lawyer gave away the farm in his own closing, essentially admitting Allison's guilty . . . .").

4

felony murder based on the predicate felony of armed robbery.  (Ingham Cnty. Cir. Ct. Op. & Order, ECF No. 8-27 atPageID.1918–1922.)[2]  Had counsel not conceded Petitioner's guilt of armed robbery in the face of Petitioner's admission, the risk may have been greater that the jurors would reject the credibility of Petitioner's position altogether and would simply leap from the inevitable conclusion that Petitioner committed armed robbery to the related determination that Petitioner committed felony murder.

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687, 104 S. Ct. at 2064.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689, 104 S. Ct. at 2065.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.  Even if a court determines that

---

[2] The magistrate judge aptly described counsel's approach as a "tactical retreat," (R & R, ECF No. 16 at PageID.2725), a characterization borrowed from *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990), cited in *Simmons v. Huss*, No. 2:18-cv-11984, 2019 WL 1746271 (E.D. Mich. Apr. 18, 2019).

5

counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691, 104 S. Ct. at 2066.

Moreover, as the Supreme Court repeatedly has said, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 739-40 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105, 131 S. Ct. at 788; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .").

The Court finds the trial court's analysis regarding counsel's tactical retreat not only reasonable, but compelling. Accordingly, Petitioner has failed to show that the trial court's determination regarding the first *Strickland* prong is contrary to, or an unreasonable application of, clearly established federal law.

Perhaps in recognition of that fact, Petitioner's objection shifts the focus of his challenge from the first facet to the second. Counsel's deficient performance was not so much the tactical retreat as it was undertaking that retreat without ever consulting Petitioner. (Pet'r's Obj., ECF No. 17 at PageID.2738) ("[I]n this case, Mr. French explicitly denies that his counsel ever discussed this strategy with him beforehand. Mr. French also did this[—presumably, "this" is explicitly denying that his counsel ever discussed the strategy with him beforehand—]in his 6.500 motion .

6

. . .").[3]  On that factual point, however, Petitioner's argument finds absolutely no support in the state court record.  The only firsthand statement that Petitioner did not discuss the issue with counsel before closing arguments appears in an attachment to a supplement to Petitioner's reply brief in this Court, almost seven years after Petitioner's trial.  (Pet'r's Aff., ECF No. 10-1 at PageID.2628.)  Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider every possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181, 131 S. Ct. at 1398.

Petitioner never raised this issue on direct appeal.  It appears for the first time in his motion for relief from judgment.  That pleading was verified, but it does not include the factual statement that Petitioner makes in the affidavit he filed in this Court.  Instead, that pleading states:

> 1. that counsel made repeated statements to the jury that Mr. French was guilty of being involved in the robbery "without Mr. French ever being asked *on the record* if he agreed with this concession . . ." (Pet'r's 6.500 Mot., ECF No. 8-20 at PageID.1760) (emphasis added);
>
> 2. "*[t]here is no record* that Mr. French agreed with counsel's decision to concede that he committed an offense that would form the foundation for felony-murder . . ." (Pet'r's 6.500 Br., ECF No. 8-20 at PageID.1782) (emphasis added);
>
> 3. "[i]t was error for this to be done without an affirmation from Mr. French *on the record* that this was in accord with his wishes . . ." (*Id.* at PageID.1783) (emphasis added).

Counsel continued the argument in a subsequent brief in the trial court.  In those arguments, counsel made the additional claim that trial counsel had *never* discussed the concession with Petitioner.  (Pet'r's 6.500 Reply Br., ECF No. 8-25 at PageID.1871, 1878-1879) ("trial counsel unconstitutionally professed Mr. French's guilt to the jury without ever getting consent from Mr.

---

[3] *See also* (Pet'r's Reply Br., ECF No. 9 at PageID.2445) ("It is undisputed that trial counsel never discussed with Mr. French that he would concede Mr. French's guilt to the jury.").

French to do so" and "trial counsel [chose]—without Mr. French's consent—to profess his guilt to the jury" and ""[t]rial counsel professed Mr. French's guilt to the jury, without first obtaining consent from Mr. French.").[4]  But those are only arguments; they are not factual averments in a verified pleading.

The state court record is silent on the essential factual foundation of Petitioner's claim—that counsel never consulted with Petitioner before conceding Petitioner's guilt on the armed robbery charge.  It is Petitioner's burden to show that counsel's performance was deficient; he has not met that burden here.  Thus, Petitioner has failed to show that the trial court's resolution of the matter is based on an unreasonable determination of the facts or that it is contrary to, or an unreasonable application of, *Strickland*.  Petitioner's objection to the R & R with regard to his second habeas ground is without merit.

### IV. Ineffective Assistance of Trial and Appellate Counsel for Failure to Investigate

Finally, Petitioner contends that his trial and appellate counsel rendered ineffective assistance because each failed to appropriately investigate Petitioner's possible defenses.  This argument is premised on Petitioner's present counsel's determination that there was a cache of material—"dozens of audio tapes of interrogations and interviews . . . and hundreds of pages of documents," (Pet'r's Mot. & Br. to Supp. 6.500 Mot., ECF No. 8-22 at PageID.1819)—that was never turned over to Petitioner's trial counsel or Petitioner's appellate counsel for the direct appeal.  That aspect of the claim, however, evolved as it worked its way through the state courts.  Petitioner's trial counsel provided an affidavit indicating that he received all of the relevant materials, but that he provided to appellate counsel only the materials she requested.  Her request,

---

[4] On appeal, however, Petitioner returned his focus to counsel's failure to make Petitioner's agreement to the concession a matter of record.  (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 8-28 at PageID.1961; Pet'r's Second Mich. Appl. for Leave to Appeal, ECF No. 8-29 at PageID.2215.)

8

in turn, centered on the police reports but did not seek all of the audio tapes or documents. Petitioner still contends that trial counsel was ineffective for failing to exploit these materials to support Petitioner's defense at trial, and otherwise ineffective as described above. Petitioner contends that appellate counsel was ineffective for: (1) failing to ask for and review the entire file before preparing Petitioner's appellate brief; and (2) failing to challenge trial counsel's effectiveness for (a) his failure to exploit the materials as part of Petitioner's defense, (b) his strategic failure in conceding guilt of armed robbery, and (c) his failure to consult Petitioner before making the concession.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel; however, the measure of appropriate performance for appellate counsel is different from that of trial counsel. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3312-13 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88, 120 S. Ct. 746, 765-66 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288, 120 S. Ct. at 766.

The R & R reviewed the trial court's rejection of this claim and concluded it was consistent with *Strickland*. As explained below, that determination is well-supported by the record and clearly established federal law.

The Court need not further address Petitioner's claims with regard to appellate counsel's failure to raise trial counsel's ineffectiveness based on the confession, the concession of guilt, or the alleged lack of consultation. For the reasons set forth above, Petitioner has not demonstrated that those issues were clearly stronger than the issues appellate counsel raised. In fact, Petitioner has failed to show that the issues have any merit at all. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner's claims regarding the additional discovery material, however, warrant further examination. The less-evolved version of Petitioner's argument, as it was initially presented to the trial court in the 6.500 motion, was premised on a *Brady* claim.[5] When that claim proved factually unsustainable, the argument shifted to trial counsel's failure to exploit the materials in Petitioner's defense and appellate counsel's failure to raise trial counsel's ineffective assistance.

The trial court rejected Petitioner's claim with regard to trial counsel because Petitioner never developed how counsel might have exploited the evidence. Instead, Petitioner argued "that, 'upon information and belief,' the [missing] evidence might have allowed defense counsel to pursue alternative theories." (Ingham Cnty. Cir. Ct. Op. & Order, ECF No. 8-27 at PageID.1926.)

---

[5] Under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87, 83 S. Ct. at 1196-97. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280, 119 S. Ct. at 1948 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70, 129 S. Ct. 1769, 1782-83 (2009). Petitioner's trial counsel's affidavit undercut the viability of the *Brady* claim.

The trial court reasoned that such a speculative assertion was insufficient to show the evidence was exculpatory or that the failure to produce it was prejudicial.

"[T]he test for prejudice under *Brady* and *Strickland* is the same." *Montgomery v. Bobby*, 654 F.3d 668, 679 n.4 (6th Cir. 2011) (quoting *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009) (internal quotation marks omitted). Indeed, the *Strickland* Court stated that "the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *see also Kyles v. Whitley*, 514 U.S. 419, 436, 115 S. Ct. 1555, 1567 (1995) (noting that the standard for assessing materiality in the context of *Brady* was "later adopted as the test for prejudice in *Strickland*"). Therefore, if Petitioner failed to demonstrate prejudice under *Brady*, he necessarily failed to show prejudice under *Strickland*.

Petitioner has since addressed that failure, presenting several details from the material that counsel might have used to cast doubt on Petitioner's involvement in the robbery or murders of Goodenow and Brown and potentially inculpate others. Petitioner's presentation is not persuasive, however. It disregards Petitioner's confession. Petitioner simply ignores the confession, concluding, as he argues in his first habeas ground, that it should never have been introduced. But, Petitioner's initial trial counsel had already challenged the admissibility of the confession, and the trial court had ruled it to be admissible. The trial court did not have the benefit of Petitioner's more recent analysis of the evidence when it rejected Petitioner's claim. Yet, Petitioner's new analysis does not support a different result. Petitioner's defense had to address his confession—it had been ruled admissible. Counsel made the decision to acknowledge the confession and attempted to focus the jury's attention on what was absent from it—an expression of the intent to kill. That approach makes sense. It did not result in Petitioner's acquittal, but it appeared to have

11

given the jury pause. They deliberated for more than a full day. This Court concludes that the approach falls well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Finally, because trial counsel's approach did not rise to the level of ineffective assistance, appellate counsel's failure to raise the issue on appeal was not ineffective assistance. In short, to the extent the trial court expressly addressed Petitioner's ineffective assistance claim in its current "evolved" state, the court's rejection of the claim is well-founded on the record and is neither contrary to, nor an unreasonable application of, *Strickland*. And, if the trial court did not address the present iteration of Petitioner's ineffective assistance claim, this Court, on de novo review, concludes that Petitioner's claim that trial and appellate counsel rendered ineffective assistance lacks merit. Petitioner's objection to the report and recommendation with regard to his third habeas ground is, therefore, also without merit.

### V.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong." *Id.* at 484, 120 S. Ct. at 1604. "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921 (1962).

## CONCLUSION

**Accordingly, IT IS HEREBY ORDERED** that the Report and Recommendation (ECF No. 16) is **APPROVED** and, as supplemented by this order, **ADOPTED** as the opinion of this Court, and Petitioner's objections (ECF No. 17) are **OVERRULED**.

**IT IS FURTHER ORDERED** that Petitioner's habeas corpus petition (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will issue.

Dated: September 13, 2021              /s/ Gordon J. Quist
                                                                      GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE